IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
ALBANY DIVISION

| | | |
|---|---|---|
| JONATHAN COLLINS, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | CASE NO.: 1:13-cv-31 (WLS) |
| | : | |
| DEMETRIUS SHEPPARD et al., | : | |
| | : | |
| Defendants. | : | |
| | : | |

## ORDER

Before the Court are Plaintiff's Motions to disallow two of Defendant's Expert Witnesses, Dr. Stephanie S. Martin and Robert Cannon (Docs. 40, 44) and Defendant Sheppard's Motion to Exclude the Expert Testimony of David Frisby (Doc. 46). All responses and replies have been filed with regard to these motions, and the Court therefore finds these motions are ripe for review. For the following reasons, Plaintiff's Motion to Exclude Expert Testimony of Dr. Stephanie S. Martin (Doc. 40) is **GRANTED-IN-PART and DENIED-IN-PART** and Plaintiff's Motion to Exclude Expert Testimony of Robert Cannon (Doc. 44) is **GRANTED-IN-PART and DENIED-IN-PART**. Defendant's Motion to Exclude Expert Testimony of David Frisby (Doc. 46) is **GRANTED-IN-PART and DENIED-IN-PART**.

### PROCEDURAL BACKGROUND

This is a Section 1983 lawsuit originally brought against four officers for violating Plaintiff's Fourth, Eighth, and Fourteenth Amendment rights. On March 22, 2011, the date of the alleged incident, Plaintiff was in custody at the Sumter Youth Development Campus, a juvenile detention facility. Plaintiff alleges his rights were violated when his arm was broken while officers were attempting to restrain and physically force him to go to his room for a "head count."

1

On June 4, 2014, the Court granted the Parties' Consent Motion to Dismiss Defendants Piortt, Gordon, and Ingle, leaving Defendant Sheppard as the remaining Defendant. (Doc. 37). The Parties subsequently filed the Motions to Exclude currently before the Court. On July 14, 2014, Defendant Sheppard filed a Motion for Summary Judgment on all of Plaintiff's claims, which remains pending and will be addressed by a further order from the Court. (Doc. 42).

## DISCUSSION

**I.     Plaintiff's Motion to Exclude Expert Testimony of Dr. Stephanie S. Martin**

Plaintiff has moved to exclude the expert testimony of Defendant's witness Dr. Stephanie S. Martin. (Doc. 40). Plaintiff moves to disallow Dr. Martin's testimony insofar as she opines on the cause of Plaintiff's broken humerus bone or, in the alternative, entirely. (*Id.* at 1). Plaintiff asserts that Dr. Martin's opinion testimony is "not based upon sufficient facts or data, is not the product of reliable principles and methods, and is not the result of applying the principles and methods reliably to the facts of the case." (*Id.*). Specifically, Plaintiff challenges Dr. Martin's opinions that if Plaintiff's arm had been lifted and twisted above his head, his shoulder would have dislocated rather than his humerus bone breaking and that Plaintiff's arm broke as a result of his resistance. (*Id.* at 4). Plaintiff argues that Dr. Martin reviewed no materials other than Plaintiff's medical record and deposition and the video of the incident prior to providing her opinion and that she has no experience in treating intentionally inflicted humerus fracture. (*Id.* at 5). Plaintiff further argues that Dr. Martin's conclusion that Plaintiff's injury resulted from a combination of the officer's raising his arm and Plaintiff's resistance, which Dr. Martin stated was based on physics, is inadmissible because Dr. Martin is not a physics expert. (*Id.* at 6 (citing Martin Depo. at 11, 22-23)).

The Court holds that Dr. Martin's testimony is admissible under *Daubert* case law and the Federal Rules of Evidence. Because Dr. Martin's opinion has a sufficient factual basis, Defendants' arguments go to the weight of her testimony, not its admissibility.

Federal Rule of Evidence 702 sets the standard for admissibility of expert opinions:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier

2

> of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. This rule contemplates that the Court will act as a gatekeeper to the admission of scientific evidence. *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589 (1993). In that function, the Court must engage in a three-part inquiry, as follows:

> (1) the expert is qualified to testify competently regarding the matters he intends to address; (2) the methodology by which the expert reaches his conclusions is sufficiently reliable as determined by the sort of inquiry mandated in *Daubert*; and (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue.

*United States v. Frazier*, 387 F.3d 1244, 1260 (11th Cir. 2004).

With regard to reliability, the Supreme Court in *Daubert* instructed district courts to consider a number of factors, including "(1) whether the expert's theory can be and has been tested; (2) whether the theory has been subjected to peer review and publication; (3) the known or potential rate of error of the particular scientific technique; and (4) whether the technique is generally accepted in the scientific community." *McCorvey v. Baxter Healthcare Corp.*, 298 F.3d 1253, 1256 (11th Cir. 2002) (citing *Daubert*, 509 U.S. at 593–94).

But "although 'rulings on admissibility under *Daubert* inherently require the trial court to conduct an exacting analysis of the proffered expert's methodology,' . . . it is not the role of the district court to make ultimate conclusions as to the persuasiveness of the proffered evidence." *Quiet Tech. DC-8, Inc. v. Hurel-Dubois UK Ltd.*, 326 F.3d 1333, 1341 (11th Cir. 2003) (citation omitted). Instead, "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 595. In other words, *Daubert* does not supplant the role of the jury. *Maiz v. Virani*, 253 F.3d 641, 666 (11th Cir. 2001).

Consequently, district courts do not exclude expert testimony simply because they find one version of the facts more persuasive than another. *See* Fed. R. Evid. 702, advisory com-

3

mittee notes ("The emphasis in the amendment on 'sufficient facts or data' is not intended to authorize a trial court to exclude an expert's testimony on the ground that the court believes one version of the facts and not the other."). Expert testimony must amount to more than "guess or speculation," but "where the expert testimony has a reasonable factual basis, a court should not exclude it. Rather, it is for opposing counsel to inquire into the expert's factual basis" on cross-examination. *United States v. 0.161 Acres of Land,* 837 F.2d 1036, 1040 (11th Cir. 1988) (citation omitted).

Dr. Martin is an orthopedic surgeon who has been in practice for thirteen years, specializing in pediatric sports medicine. (Doc. 40-2 at 6.) In preparing her report, Dr. Martin reviewed Plaintiff's medical records following the incident, the video footage of Plaintiff's deposition testimony, the video of the incident, Plaintiff's Complaint, and Plaintiff's Response to Defendants' First Interrogatories.

The Court first considers the admissibility of Dr. Martin's testimony under Federal Rule of Evidence 702. First, Plaintiff states that it does not dispute Dr. Martin's expertise but bases its Motion to Exclude on the fact that Dr. Martin has not treated patients with intentionally inflicted humerus fractures. (Doc. 57 at 1.) Dr. Martin has specialized knowledge as an orthopedic surgeon that will help the trier of fact. The fact that she has not treated a patient who has suffered an intentionally inflicted humerus fracture does not disqualify her as an expert in this case.

Next, Dr. Martin relied on Plaintiff's medical records and deposition statements and her own training and experience in forming her opinion. The Court finds that her opinion as to how a humerus bone can fracture in the way that Plaintiff's did is based on Dr. Martin's reliable application of her training and experience treating humerus fractures provides. However, Dr. Martin admits that she could not discern all the facts from the video, specifically whether Plaintiff was being held up by officers or resisted falling forward himself. (Doc. 40-1 at 20.) Nevertheless, Dr. Martin opines on the actual causation of Plaintiff's injuries. (*See, e.g.*, Doc. 42-7 at 6(stating "it is my opinion that Plaintiff's fracture was caused by the force of J.C.'s resistance together with the force applied by the officer)). Where an expert has not established a connection "between her experience and the facts of the case," then the Court is

4

asked to rely on "nothing but her word." *Dishman v. Wise*, 2009 WL 1938968 at *5 (M.D. Ga. 2009) (excluding the testimony of an orthopedic surgeon as to causation of injuries). The portions of Dr. Martin's testimony in which she opines on the actual causation of Plaintiff's injury are therefore inadmissible.

The Court finds that Dr. Martin is qualified to offer an expert opinion. Most of Plaintiff's objections to Dr. Martin's testimony, many of which are grounded in his disagreement with Dr. Martin's opinions, go toward the weight to be afforded it not its admissibility. Dr. Martin shall be permitted to provide expert testimony as to how a humerus bone can fracture generally, how a humerus bone can fracture in the way that Plaintiff's did, the treatment Plaintiff was provided for his broken arm, lasting symptoms commonly associated with broken arms, and the symptoms reportedly experienced by Plaintiff. However, the portions of Dr. Martin's testimony regarding the actual causation of Plaintiff's injury shall be excluded because they are not based on a reliable application of Dr. Martin's expertise to the facts of the case. Plaintiff's Motion to Exclude the Expert Testimony of Dr. Martin (Doc. 40) is therefore **GRANTED-IN-PART**.

## II.     Plaintiff's Motion to Exclude Expert Testimony of Robert Cannon

Plaintiff also moves to exclude the expert testimony of Robert Cannon. (Doc. 44). First, Plaintiff objects to Mr. Cannon's testimony because it is being proffered "to tell the jury that Sheppard did not use excessive force," a conclusion that Plaintiff argues is for the jury to make. (Doc. 44-1 at 3-4 (citing Doc. 40-2 at 2)). Second, Plaintiff objects to Mr. Cannon's testimony because it runs afoul of the Eleventh Circuit requirement that the nature and extent of an injury be considered in determining excessive force claims. (*Id.* at 4-5). Finally, Plaintiff objects to Mr. Cannon's testimony on the basis that he is unqualified to render an expert opinion "about the physio-mechanical cause" of Mr. Collins' broken arm. (*Id.* at 5-6).

Mr. Cannon is the Director of the Georgia Department of Juvenile Justice (GDJJ) Training Academy (the Academy). (Doc. 45-1 at 3). At the time of the incident, the Academy taught classes in Safe Crisis Management techniques, including the multiple person upper torso restraint, which Defendant Sheppard allegedly attempted to use on Plaintiff. (*Id.* at 5, 8-9). In his role at the Department of Juvenile Justice, Mr. Cannon is periodically asked to

review videos of incidents involving the applications of physical control techniques and to give opinions on whether those techniques were applied correctly. (Doc. 45-1 at 7).

As discussed above, Federal Rule of Evidence 702 sets forth four requirements for expert testimony, and in *Daubert*, the Supreme Court provided other factors to be considered regarding the reliability of expert testimony.

In considering the Rule 702 requirements, the Court first finds that Mr. Cannon has specialized knowledge regarding use of force techniques authorized and taught by the GDJJ and whether the particular technique that Defendant Sheppard allegedly attempted was performed properly. The Court also finds that Defendant Sheppard has specialized knowledge regarding when and how the misapplication of prescribed techniques can cause injury. The Court further finds that Mr. Cannon based his opinion on sufficient facts and data, specifically Safe Crisis Management materials, depositions of the officers involved, the video of the incident, and the incident report. (Doc. 45-1 at 5, 17). Next, the Court finds that Mr. Cannon's testimony regarding use of force techniques authorized and taught by the GDJJ and whether the particular technique that Defendant Sheppard allegedly attempted was performed properly is based on reliable principles and methods, particularly the GDJJ's policies and the Safe Crisis Management Training Program. Finally, the Court finds that Mr. Cannon has reliably applied these principles and methods to the facts at issue. Further, regarding the *Daubert* factors, the Court finds that Mr. Cannon bases his opinion on the appropriateness of Defendant Sheppard's application of force on reliable theories, specifically the techniques adopted and taught by the GDJJ. Finally, the Court finds that Mr. Cannon's testimony will aid the trier of fact in determining the excessive force issue in this case by providing foundational knowledge about generally accepted policies and procedures for use of force by law enforcement, the GDJJ's policies and procedures, and whether those policies and procedures were followed in this case.

Plaintiff argues that Mr. Cannon's testimony that Defendant Sheppard did not use excessive force is improper testimony regarding a legal conclusion to be drawn by the finder of fact. (Doc. 44-1 at 3-5.) Plaintiff essentially argues that Mr. Cannon is offering an opinion on an ultimate issue in this case. Federal Rule of Evidence 704 provides, "An opinion is not ob-

6

jectionable just because it embraces an ultimate issue." The Advisory Committee's notes on Rule 704 make clear, however, that despite the adoption of Rule 704, the Federal Rules of Evidence include sufficient safeguards against "the admission of opinions which would merely tell the jury what result to reach" and "opinions phrased in terms of inadequately explored legal criteria."

In his deposition, Mr. Cannon did in fact state that he had concluded that Defendant Sheppard did not use excessive force during the alleged incident. (Doc. 45-1 at 9, 12). Mr. Cannon uses the same terminology as the Eighth Amendment standard but does not use the analysis for determining excessive force in its constitutional sense, reference the constitutional standard for excessive force, or note that the constitutional standard for "excessive force" does not equate to violating GDJJ or other generally accepted policies. (*See Id.*). The use of the phrase "excessive force" is an opinion "phrased in terms of inadequately explored legal criteria." The Court finds that the portions of Mr. Cannon's testimony regarding whether Defendant Sheppard applied "excessive force" are to be excluded. Mr. Cannon's testimony shall be restricted to techniques and procedures for use of force within the GDJJ, whether Defendant Sheppard applied those techniques and procedures properly, and what the potential consequences of improper application of use of force could be.

Plaintiff also argues that Mr. Cannon is unqualified to render an opinion on the actual cause of Plaintiff's broken humerus. (Doc. 44-1 at 5). In his deposition, Mr. Cannon stated, "In reviewing the video, I'm of the opinion that it was Collins' resistance that . . . caused the break." (Doc. 45-1 at 12). As with Dr. Martin, Defendant has not demonstrated how Mr. Cannon reliably applied his experience and specialized knowledge to the facts of this case, which he admits he is not certain of, *see, e.g.*, Doc. 45-1 at 19 (stating ". . . I'm not sure whether he's trying to pull the arm down [or] push it up), to determine the actual causation of Plaintiff's injury. Therefore, the portions of Mr. Cannon's testimony regarding the actual causation of Plaintiff's injury shall be excluded because they are not based on a reliable application of Mr. Cannon's expertise to the facts of the case. Mr. Cannon shall be permitted to testify as to generally accepted protocol and techniques for law enforcement use of force, the use of force standards applicable to Defendant at the time of the incident, the conse-

quences of inappropriate use of force, and whether Defendant used force appropriately in light of the applicable standards based on the discernable facts of this case. Plaintiff's Motion to Exclude the Expert Testimony of Robert Cannon (Doc. 44) is **GRANTED-IN-PART**.

### III. Defendant's Motion to Exclude Expert Testimony of David Frisby

Defendant moves to exclude the expert testimony of David Frisby. (Doc. 46). Defendant argues that Mr. Frisby's opinion is not reliable, will not assist the finder of fact in this case, and will confuse the issues and mislead a jury. (*Id.* 2). Specifically, Defendant argues that Mr. Frisby is not qualified to give an opinion on the cause of Plaintiff's fractured humerus. (*Id.* at 8). Defendant also argues that Mr. Frisby's opinion is unreliable because he "misunderstands both the facts and the legal standard governing Plaintiff's excessive force claim" and specifically because he relied on a GDJJ policy that was not in effect at the time of the incident. (*Id.* at. 10). Finally, Defendant argues that Mr. Frisby's testimony is not relevant and will not assist the trier of fact because it is based on an incorrect standard for use of excessive force.

Mr. Frisby is a law enforcement officer with over twenty-five years' experience who has also taught Defensive Tactics and other law enforcement subjects at colleges, universities, and training academies. (Doc. 46-1 at 2). Mr. Frisby has given expert testimony on police use of force, training, and practices in state and federal courts. (*Id.* at 3). Mr. Frisby formed his opinions on this case based on his law enforcement experience, education, training and knowledge of law enforcement standards, analysis and study in the field, consultation of professional literature, information gained at seminars and workshops, the facts of the case, and case-related materials that he was provided, including the video of the incident. (*Id.* at 4.)

Regarding the Rule 702 requirements, the Court finds that Mr. Frisby has specialized knowledge, acquired from years' of law enforcement and training experience, about law enforcement training and use of force that will be helpful to the trier of fact. The Court notes that *Daubert* does not preclude expert testimony just because it is based on personal experience. *U.S. v. Frazier*, 387 F.3d 1244, 1260-61 (11th Cir. 2004); *see also Kumho Tire Company, LTD v. Carmichael*, 526 U.S. 137, 152 (1999).

8

The Court finds that Mr. Frisby's opinions regarding use of force and the appropriateness and reasonableness of use of force in the present case are reliable and based on sufficient facts and data and reliable methodology –depositions, reports, video, and photographs –as well as generally accepted law enforcement standards and GDJJ policies. In fact, Mr. Frisby employs methodology very similar to Defendant's proffered expert Mr. Cannon's. However, Defendant notes specifically that Mr. Frisby's opinion is unreliable because he relies on a GDJJ policy that was not effective at the time the incident occurred. (Doc. 46 at 11-12). In his reply brief, Plaintiff argues that the policy relied on by Mr. Frisby and the policy in effect at the time of the incident, and relied on by Mr. Cannon, are substantially the same. (Doc. 50 at 13-14.) The Court agrees and finds that Mr. Frisby's testimony is not unreliable merely because he relied on the 2012 policy in drafting his Rule 26 report.

Finally, the Court finds that Mr. Frisby's testimony will aid the trier of fact in determining the excessive force issue in this case by providing foundational knowledge about generally accepted policies and procedures for use of force by law enforcement, the GDJJ's policies and procedures, and whether those policies and procedures were followed in this case.

However, like Mr. Cannon, Mr. Frisby uses "excessive force" terminology but does not analyze excessive force in its constitutional sense, reference the constitutional standard for excessive force, or note that the constitutional standard for "excessive force" does not equate to violating GDJJ or other generally accepted policies. (*E.g.*, Doc. 46-2 at 15, 36, 42, 46). The Court notes that Mr. Frisby did not use the term "excessive force" in his Rule 26 report and many of the times when he used it during his deposition were at the prompting of Defense counsel. Nevertheless, the use of the phrase "excessive force" is an opinion "phrased in terms of inadequately explored legal criteria." The Court finds that the portions of Mr. Frisby's testimony regarding whether Defendant Sheppard applied "excessive force" are to be excluded. Mr. Frisby's testimony is to be restricted to techniques and procedures for use of force within the GDJJ, generally accepted standards and techniques for use of force by law enforcement, whether Defendant Sheppard applied those techniques and pro-

9

cedures properly, and what the potential consequences of improper application of use of force could be.

Also as with Mr. Cannon, Defendant argues that Mr. Frisby is unqualified to render an opinion on the actual cause of Plaintiff's broken humerus. (Doc. 46 at 8). In his deposition, Mr. Frisby stated what he believes Plaintiff was thinking during incident (Doc. 46-2 at 31 ("I believe that was a factor in his mind.")) as well stated that he "believes" a number of things about the incident, such as that the other officers were obstructing Plaintiff from falling to the ground, without stating the basis of his beliefs or how his expertise informed those beliefs. (*See Id.* at 27-28, 33). In his expert report, Mr. Frisby stated that the force applied was "to such a degree that it would break bones of a juvenile prisoner in a secure facility . . .", which suggests that Mr. Frisby's opinion is that the force of the officers was the cause of Plaintiff's injury. (Doc. 46-1 at 6.) As with Dr. Martin and Mr. Cannon, Plaintiff has not demonstrated that Mr. Frisby reliably applied his experience and specialized knowledge to the facts of this case, which he admits he is not certain of, *see, e.g.*, Doc. 46-2 at 19 (stating ". . . I'm not sure whether he's trying to pull the arm down [or] push it up), to determine the actual causation of Plaintiff's injury. Therefore, the portions of Mr. Frisby's testimony regarding the actual causation of Plaintiff's injury shall be excluded because they are not based on a reliable application of Mr. Frisby's expertise to the facts of the case. Mr. Frisby shall be permitted to testify as to generally accepted protocol and techniques for law enforcement use of force, the use of force standards applicable to Defendant at the time of the incident, the consequences of inappropriate use of force, and whether Defendant used force appropriately in light of the applicable standards based on the discernable facts of this case. Defendant's Motion to Exclude the Expert Testimony of David Frisby (Doc. 50) is **GRANTED-IN-PART**.

## CONCLUSION

For the foregoing reasons, Plaintiff's Motion to Exclude Expert Testimony of Dr. Stephanie S. Martin (Doc. 40) is **GRANTED-IN-PART and DENIED-IN-PART** and Plaintiff's Motion to Exclude Expert Testimony of Robert Cannon (Doc. 44) is **GRANTED-IN-PART and DENIED-IN-PART**. Defendant's Motion to Exclude Expert Testimony of David Frisby (Doc. 46) is **GRANTED-IN-PART and DENIED-IN-PART**.

**SO ORDERED**, this 14th day of October, 2014.

/s/ W. Louis Sands
**W. LOUIS SANDS, JUDGE
UNITED STATES DISTRICT COURT**