**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF GEORGIA**
**ALBANY DIVISION**

| | | |
|---|---|---|
| JONATHAN COLLINS, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | CASE NO.: 1:13-cv-31 (WLS) |
| | : | |
| DEMETRIUS SHEPPARD et al., | : | |
| | : | |
| Defendants. | : | |
| | : | |

## ORDER

Before the Court is Defendant Sheppard's Motion for Summary Judgment (Doc. 42). For the following reasons, Defendant's Motion for Summary Judgment (Doc. 42) is **GRANTED** as to each of Plaintiff's claims.

## PROCEDURAL BACKGROUND

This is a Section 1983 lawsuit against four officers alleging violations of Plaintiff Jonathan Collins' Fourth, Eighth, and Fourteenth Amendment rights. On March 22, 2011, the date of the alleged incident, Plaintiff was in custody at the Sumter Youth Development Campus, a juvenile detention facility. Plaintiff alleges his rights were violated when his arm was broken while officers were attempting to restrain him and physically force him to go to his room for a "head count."

On June 4, 2014, the Court granted the Parties' Consent Motion to Dismiss Defendants Piortt, Gordon, and Ingle, leaving Defendant Sheppard as the only remaining Defendant. (Doc. 37.) The Parties subsequently filed Motions to Exclude Expert Testimony, each of which was granted-in-part by the Court on October 14, 2014. On July 14, 2014, Defendant Sheppard filed a Motion for Summary Judgment (Doc. 42) on all of Plaintiff's claims. All briefings have been filed on the Motion for Summary Judgment, and the Court now finds it is ripe for review.

**FACTUAL FINDINGS**

On March 22, 2011, Plaintiff was in the custody of the Georgia Department of Juvenile Justice at Sumter Youth Development Center (the Facility). At approximately 5:00 PM that day, Lieutenant Soretha Gordon was the officer in charge at the Facility. Lieutenant Gordon and at least six other Facility officers responded to a call for assistance in Building 7C where several juveniles were refusing to go to their rooms for a routine "head count" because they were angry that their phone privileges had been revoked. One of those juveniles was Plaintiff. Lt. Gordon gave Plaintiff multiple verbal commands to go to his room and Plaintiff refused. Plaintiff stood still with his arms at his side, refusing to go to his room. Officers Demetrius Sheppard (Defendant) and Christopher Piorrt attempted to restrain Plaintiff by grabbing his arms while at least five other officers surrounded Plaintiff, Defendant, and Piorrt. Lt. Gordon instructed the officers "keep him up and put the handcuffs on him." Plaintiff initially resisted the officers' attempts to restrain him. Plaintiff did not want to be handcuffed or taken to the ground. Officer Piorrt physically restrained Plaintiff's left side, maintaining his hand and wrist near his waist line. Defendant physically restrained Plaintiff's right side, but Plaintiff's hand and wrist became elevated to at least the height of his shoulder blade.

At some point during the elevation of Plaintiff's right arm, his humerus broke. Plaintiff suffered a spiral mid-shaft humerus fracture with a butterfly segment. Essentially, his arm broke in three segments as a result of rotational or torsion force. Plaintiff's injury required orthopedic surgery to place a plate fixed by screws to his humerus bone. After Plaintiff's humerus broke, he was handcuffed and taken immediately for medical care. After returning to the Facility from the hospital, Defendant told Plaintiff that he was "sorry" his arm had been fractured.

**DISCUSSION**

## I. Summary Judgment Standard

Under Federal Rule of Civil Procedure 56, summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving

party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). An issue is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Hoffman v. Allied Corp.*, 912 F.2d 1379, 1383 (11th Cir. 1990). A fact is "material" if it is a legal element of the claim under the applicable substantive law and it might affect the outcome of the nonmoving party's case. *Allen v. Tyson Foods*, 121 F.3d 642, 646 (11th Cir. 1997) (citing *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986)). A judgment is appropriate "as a matter of law" when the nonmoving party has failed to meet its burden of persuading the Court on an essential element of the claim. *See Cleveland v. Policy Management System Corp.*, 526 U.S. 795, 804 (1999); *Celotex Corp.*, 477 U.S. at 323.

The movant bears the initial burden of showing that there is no genuine issue of material fact. *Celotex Corp.*, 477 U.S. at 323. The movant can meet this burden by presenting evidence showing there is no dispute of material fact or by showing the district court that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Id.* at 322–24. Once the movant has met its burden, the nonmoving party is required "to go beyond the pleadings" and identify "specific facts showing that there is a genuine issue for trial." *Id.* at 324. To avoid summary judgment, the nonmoving party must do more than summarily deny the allegations or "show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rather, the nonmoving party must provide "enough of a showing that the jury could reasonably find for that party." *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990) (citing *Anderson*, 477 U.S. at 251).

On a motion for summary judgment, the Court must view all the evidence and all factual inferences drawn therefrom in the light most favorable to the nonmoving party and determine whether that evidence could reasonably sustain a jury verdict. *Celotex Corp.*, 477 U.S. at 322–23; *Allen*, 121 F.3d at 646. However, the Court must grant summary judgment if there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c).

## II. Analysis

### A. Plaintiff's Fourth Amendment Claim

In his Complaint, Plaintiff alleges Defendant violated his Fourth Amendment rights. (Doc. 1 at 5.) Defendant moves for summary judgment on Plaintiff's Fourth Amendment claim, arguing that Plaintiff was not a "free citizen" at the time of the incident. (Doc. 42-2 at 3.) "Excessive use of force claims arising 'in the context of an arrest, investigatory stop, or other 'seizure' of a *free* citizen should be analyzed under the *Fourth Amendment*." (*Id.* (quoting *Graham v. Connor*, 490 U.S. 386, 395 (1989) (emphasis added)).) In his response to the Motion for Summary Judgment, Plaintiff does not address his Fourth Amendment claim or Defendant's argument regarding it.

The Court notes that the extent to which the Fourth Amendment right to be free from excessive force extends to pretrial detainees remains unclear but that it is well-established that the Fourth Amendment protects pretrial detainees at least until their initial judicial appearance. *Id.* at 395 n. 10; *Albritten v. Dougherty County, Ga.*, 973 F.Supp. 1455, 1463 (M.D. Ga. 1997). However, juveniles who have been adjudicated delinquent are not considered "pretrial detainees." *See Schall v. Martin*, 467 U.S. 253, 268 (1984) (discussing the pretrial detention of juveniles and distinguishing it from post-adjudication detention).

The Court finds that at the time of the incident Plaintiff was in the custody of the Georgia Department of Juvenile Justice pursuant to a delinquency adjudication and was therefore not a "free citizen" or pretrial detainee. The Fourth Amendment is not a proper vehicle for an excessive force claim in this case. *See Graham*, 490 U.S. at 395. Defendant's Motion for Summary Judgment (Doc. 42) as to Plaintiff's Fourth Amendment claim is therefore **GRANTED**.

### B. Plaintiff's Fourteenth and Eighth Amendment Claims

In his Motion for Summary Judgment, Defendant argues that the Eighth Amendment does not protect juvenile detainees because they have not been convicted *criminally*. (Doc. 42-2 at 4.) Defendant cites *H.C. by Hewett v. Jarrard*, 786 F.2d 1080 (11th Cir. 1986), and parenthetically describes it as a case applying the Fourteenth Amendment in a juvenile detention facility. (*Id.*) Defendant fails to note that *H.C. by Hewett* involved a juvenile who

had not yet been adjudicated delinquent. *Id.* The Eleventh Circuit examined at length the distinction between pretrial detainees and convicted detainees to determine whether the Fourteenth Amendment or the Eighth Amendment was the proper vehicle for the plaintiff's excessive force claim. *Id.* at 1084-86. The court did not hold, or even discuss, whether post-adjudication juvenile detainees are protected by the Eighth Amendment. However, in *McReynolds v. Alabama Department of Youth Services*, the Eleventh Circuit reversed the dismissal of the plaintiff's Eighth Amendment excessive force claim. 204 F. App'x. 819 (11th Cir. 2006). The plaintiff in *McReynolds*, like the Plaintiff here, was in custody pursuant to a delinquency adjudication, and the court made no indication that the Eighth Amendment was an improper vehicle for Plaintiff's claim. *Id.*; Brief of Appellee at *6-7, *McReynolds v. Alabama Department of Youth Services*, 204 F. App'x. 819 (11th Cir. August 21, 2006). The Court holds, therefore, that Plaintiff may properly bring an Eighth Amendment claim for excessive force.[1]

Plaintiff also brings an excessive force claim under the due process clause of the Fourteenth Amendment. (Doc. 1 at 5.) After conviction, the Eighth Amendment "serves as the primary source of substantive protection . . . in cases . . . where the deliberate use of force is challenged as excessive and unjustified." *Whitley v. Albers*, 475 U.S. 312, 327 (1986). "Any protection that substantive due process affords convicted prisoners against excessive force is, we have held, at best redundant of that provided by the Eighth Amendment. *Graham v. Connor*, 490 U.S. 386, 395 n. 10 (1989). Thus, "[a] claim of excessive force under the Fourteenth Amendment is analyzed as if it were an excessive force claim under the Eighth Amendment." *Fennell v. Gilstrap*, 559 F.3d 1212, 1216 n. 5 (11th Cir. 2009) (citations omitted). The Court will therefore consider Plaintiff's Eighth and Fourteenth Amendment claims simultaneously. For the purposes of its analysis of these claims, where the Court refers to Eighth Amendment standards, the Court considers those Fourteenth Amendment excessive force standards as well.

The constitutionality of prison guards' use of force rests on "whether force was applied in good faith effort to maintain or restore discipline or maliciously and sadistically for

[1] The Court notes that the Eighth Amendment "cruel and unusual punishment" clause governs the States through the Due Process Clause of the Fourteenth Amendment. *Estelle v. Gamble*, 429 U.S. 97, 102 (1976) (citing *Robinson v. California*, 370 U.S. 660 (1962)).

the very purpose of causing harm." *Whitley v. Albers*, 475 U.S. 312, 320–321(1986) (quoting *Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir.1973)). "To establish a claim for excessive force, the plaintiff must show that (1) the defendants acted with a malicious and sadistic purpose to inflict harm and (2) that more than a *de minimis* injury resulted." *McReynolds*, 204 F. App'x. at 822 (11th Cir. 2006).

In determining whether malicious or sadistic intent existed, courts consider a variety of factors, including: (1) the need for the application of force; (2) the relationship between the need and the amount of force that was used; (3) the extent of the injury inflicted upon the prisoner; (4) the extent of the threat to the safety of staff and inmates; and (5) any efforts made to temper the severity of a forceful response. *Skritch v. Thornton*, 280 F.3d 1295, 1300 (11th Cir. 2002). A wide range of deference is afforded to officers' choices to use force in maintaining security, but it is well established that "officers cannot continue the use of force once the threat has passed or the prisoner is subdued." *Id.* at 1303; *Campbell v. Sikes*, 169 F.3d 1353, 1374 (11th Cir.1999).

The Court notes at the outset that there is video footage of the incident at issue. (Doc. 42-4.) Though video footage can sometimes be conclusive evidence of events, *see Scott v. Harris*, 550 U.S. 372, 380 (2007), the Court finds that, here, the video is not evidence at all, much less conclusive evidence, of a number of facts because the Plaintiff and Defendant are surrounded by officers and not visible during portions of the video. The Court, however, does find that the video conclusively establishes some facts, such as Plaintiff's refusal to go to his room after multiple verbal orders and Plaintiff's initial resistance to the officers' attempt to restrain him.

1. <u>Need for the Application of Force</u>

The Court first considers the need for the application of force. The Eleventh Circuit has held that where an inmate is not physically resisting but rather refusing to follow orders, the use of force is necessary. *E.g.*, *Sanchez v. McCray*, 349 F. App'x 479 (11th Cir.2009); *Bennet v. Parker*, 898 F.2d 1530 (11th Cir. 1990); *Brown v. Smith*, 813 F.2d 1187 (11th Cir. 1987). "[P]rison guards do not have the luxury or obligation to convince every inmate that their orders are reasonable and well-thought out. Certainly they are not required to do so where an

inmate repeatedly fails to follow those orders." *Danley v. Allen*, 540 F.3d 1298, 1307 (11th Cir. 2008). Specifically, in *Brown*, the court held that the use of force was necessary to force an inmate into his cell for the purposes of a head count. *Brown*, 813 F.2d at 1188.

Plaintiff refused to follow numerous orders to go to his room for head count. When asked, "Is there anything Lieutenant Gordon could have said to you to make you go to your room?", Plaintiff responded, "No, ma'am." (Doc. 42-9 at 19.) Effectuating detainee compliance with officers' orders and performing routine security measures such as headcounts warrant the application of force where no other means will achieve these goals. *See, e.g. Brown*, 813 F.2d at 1189. The Court finds that there is no genuine issue of material fact as to whether the use of force was necessary to force Plaintiff to comply with Lieutenant Gordon's orders and return to his room for a headcount.

2. Extent of the Injury

While the seriousness of the injury incurred is not a threshold issue in an excessive force claim, it is a factor in determining whether force was applied maliciously or sadistically. *Wilkins v. Gaddy*, 559 U.S. 34, 37-8 (2010). The extent of the injury can inform the determinations of how much force was applied and whether that force was necessary. *Id.* The Eleventh Circuit has found *de minimis* injury where only minor discomfort resulted from the use of force. *McReynolds*, 204 Fed.Appx. at 822.

Defendant's Motion for Summary Judgment does not argue that Plaintiff's injury was *de minimis* but rather focuses on whether Defendant's excessive force caused Plaintiff's injury. (Doc. 42-2 at 14-16.) Plaintiff suffered a spiral mid-shaft humerus fracture with a butterfly segment. Essentially, his arm broke in three segments as a result of rotational or torsion force. Plaintiff's injury required orthopedic surgery to place a plate fixed by screws to his humerus bone. In the video of the incident, an audible "pop" can be heard at the point in time in which Plaintiff's arm broke. An injury of this type would cause a significant amount of pain. (Doc. 51-1 at 7.) The Court finds that Plaintiff's injury was more than *de minimis*.

3. Relationship between the Need for Force and the Amount of Force Used

In his Motion for Summary Judgment, Defendant cites *Fennel v. Gilstrap*, a case in which the Eleventh Circuit held that a kick to a prisoner's shoulder that unintentionally

struck his head was reasonable in light of the fact that six officers were unable to restrain the prisoner. (Doc. 42-2 at 1011 (citing 559 F.3d 1212 (11th Cir. 2009)).) The *Fennel* court held that the officer's use of force was a "good faith effort to maintain or restore discipline in a difficult situation." *Fennel*, 559 F.3d at 1218-19 (quoting *Cockrell v. Sparks*, 510 F.3d 1307, 1311 (11th Cir. 2007). In *Cockrell*, the court held that an officer's open-handed shove of an unruly inmate who persisted in banging on his cell door and shouting was not excessive even though it resulted in the inmate's falling and breaking his hip. 510 F.3d at 1311. The court held that an open-handed shove is "as near to the minimum amount as an officer can employ, and it is not disproportionate to the need to restore order when dealing with a drunk and boisterous inmate." *Id.* In another Eleventh Circuit case, *Brown v. Smith*, a detainee engaged in a verbal altercation with prison guards and refused to follow prison guards' orders to return to his cell. 813 F.2d 1187, 1189 (11th Cir. 1987). There, the court held:

> Although we cannot pinpoint with precision the amount of force used by guard Smith, the fact that there was no more than minimal injury, that some amount of force was justified under the circumstances, and that the force was used for a legitimate security purpose persuades us that the evidence in this case raises only a "mere dispute over the reasonableness of the particular use of force" and could not support "a reliable inference of wantonness in the infliction of pain."

*Brown*, 813 F.2d at 1189-90 (quoting *Whitley v. Albers*, 475 U.S. 312, 322 (1986)).

Here, the Court has found that the use of *some* force was justified and also that Plaintiff's injury was more than *de minimis*. (*See supra*.) And, as in *Brown*, the Court "cannot pinpoint with precision the amount of force used." In his affidavit, Defendant stated that Plaintiff "vigorously resisted [Defendant's] attempts to restrain [Plaintiff] by shifting his weight around, lifting his feet off the ground, and generally thrashing and wiggling." (Doc. 42-5 at 4; *see also* Doc. 42-6 at 4-5.) Defendant also testified that, "[h]is action and my action both caused his arm to get broke." (Doc. 42-18 at 81.) Plaintiff also testified that he resisted restraint. (*E.g.*, Doc. 42-8 at 23.) Plaintiff's resistance and Defendant's efforts to restrain Plaintiff physically were opposing forces, and there remains an issue of fact as to which of these forces or what the proportions of a combination of these forces were that caused Plaintiff's arm to become elevated and twisted to the point of breaking.

Defendant did not explain in his affidavit or deposition how Plaintiff's arm got in the position it was in –extended upwards behind his back –at the time it fractured. Specifically, Defendant testified in his deposition that he did not know how Plaintiff's arm became elevated to the point where it broke. (Doc. 42-18 at 76-77.) Officer Piorrt, the officer on the Plaintiff's left side, testified in his deposition that he could not recall whether at any time during the incident Defendant raised Plaintiff's arm. (Doc. 42-13 at 19-20.) He also testified that he could not recall how Defendant's arm became raised to the position where it fractured. *Id.* Lieutenant Gordon, who also witnessed the incident, stated in her deposition, "I don't know if Officer Sheppard pulled [Plaintiff's] arm up." (Doc. 49-1 at 7.) Plaintiff, however, alleges and testified in his deposition that Defendant "took my arm and put it pretty much over my head." (Doc. 42-8 at 26.) While both parties have submitted evidence in the form of expert testimony as to the cause of Plaintiff's injury, the Court, in an earlier order, ruled that those experts are not qualified to opine as to the actual cause of Plaintiff's injury. (Doc. 62.) That evidence, therefore, does not resolve the issue of how much force was applied by Defendant Collins. The issue of how much force was applied by Defendant therefore remains in dispute, preventing the Court from determining the proportion of the force to the need.

4. Extent of the Threat to the Safety of Staff and Inmates

The Court next considers the extent of the threat to the safety of staff and inmates posed by Plaintiff's refusal to go to his room and subsequent resistance to the officers' attempt to restraint him. The extent of the threat is to be viewed "as reasonably perceived by the responsible officials on the basis of the facts known to them." *Whitley*, 475 U.S. at 321. An inmate's refusal to comply with orders creates a threat to the safety of staff and inmates. *See, e.g.*, *Danley*, 540 F.3d at 1308; *McClendon v. Smith*, at 2014 WL 575538 *6 (M.D. Ga. 2014). However, "officers cannot continue the use of force once the threat has passed or the prisoner is subdued." *Skritch*, 280 F.3d at 1303; *Campbell v. Sikes*, 169 F.3d 1353, 1374 (11th Cir.1999).

As discussed in the Court's analysis of the first factor, the need for force, Plaintiff's refusal to obey orders created a disturbance and, as admitted by Plaintiff, created a need for

the use of force. Before Officer Piortt and Defendant placed their hands on Plaintiff, Plaintiff's resistance was non-violent. Defendant stated in his deposition that Plaintiff posed no immediate threat to the safety of other inmates. (Doc. 42-18 at 63.) Nevertheless, Plaintiff's refusal to follow orders posed a threat to the safety of staff and inmates in several ways. First, at least six officers' attention was diverted from maintaining security throughout the facility to the task of forcing Plaintiff to comply with orders. Second, a single detainee's refusal to follow orders threatens to undermine officers' authority throughout a facility. And finally, a detainee's non-violent protestations can easily escalate to physical resistance (and officers are not required to wait for this escalation before using physical force). However, the Court must consider whether the threat posed was deescalated by the time Plaintiff's arm was broken. Officer Piorrt and Defendant had a hold of Plaintiff's arms and at least five other officers surrounded Plaintiff, but the Plaintiff had not yet been placed in handcuffs and may have still been resisting restraint. The Court finds that a threat remained until Plaintiff ceased resisting and was placed in handcuffs, though the threat was minimized by the Officers' physical control of Plaintiff.

5. Efforts Made to Temper the Severity of a Forceful Response

Finally, the Court considers efforts made by the officers' to temper the severity of the force used against Plaintiff. These efforts can include: ceasing the use of force once a detainee has been subdued, *Danley*, 540 F.3d at 1308-09; efforts to check on the detainee's well-being throughout the application of force, *Stanfill v. Talton*, 851 F.Supp.2d 1346, 1373 (M.D. Ga. 2002) (holding that checking on a prisoner every fifteen minutes while he was in a restraint chair constituted an effort to temper the severity of a forceful response); and post-injury efforts to ameliorate the effects of force used, such as immediately summoning medical assistance, *Cockrell*, 510 F.3d at 1312.

As discussed above, a genuine issue of fact remains as to the amount of force used by Defendant at the time Plaintiff's arm broke. However, the Court considers the surrounding efforts to temper the severity of the force used. First, officers attempted for several minutes. to persuade Plaintiff to go to his room before resorting to physical force. Next, immediately after Plaintiff was handcuffed, he was taken for medical attention. Finally, after Plaintiff re-

ceived medical attention and returned to his room, Defendant stated that he was "sorry" Plaintiff's arm was broken. The Eleventh Circuit has held that such an apology is evidence of a lack of malicious intent. *Brown v. Acting Director of Metro Dade Correctional*, 360 Fed. App'x 48, 55 (11th Cir. 2010).

6. Conclusion

After considering the factors discussed above, the Court finds that the need for force, extent of the threat, and efforts to temper factors weigh in favor of Defendant. The extent of the injury factor weighs in favor of Plaintiff. The factor addressing the proportionality of the force used to the need for force is indeterminable because an issue of fact remains as to the exact amount of force used by Defendant. Nevertheless, the Court concludes, viewing the facts and evidence in the light most favorable to Plaintiff, that even if Defendant applied enough force to break Plaintiff's arm, there is no evidence of a malicious or sadistic intent on Defendant's part. The Court finds that the factors discussed in *Skritch* and *Whitley* weigh in favor of Defendant and point to a conclusion that Defendant did not have malicious or sadistic intent when he necessarily used force to respond to a legitimate safety threat. The issue remaining in this case –the exact amount of force used –raises only a "mere dispute over the reasonableness of the particular use of force." *Brown*, 813 F.2d at 1189-90 (quoting *Whitley v. Albers*, 475 U.S. 312, 322 (1986)). Even with that as an unresolved issue, Plaintiff is unable to demonstrate that a genuine issue of material fact exists as to whether Defendant acted maliciously. Without establishing this element of his claim, Plaintiff cannot meet his burden of proof. Defendant's Motion for Summary Judgment on Plaintiff's Eighth and Fourteenth Amendment claims is therefore **GRANTED**.

## CONCLUSION

For the foregoing reasons, Defendant's Motion for Summary Judgment (Doc. 42) is **GRANTED** as to each of Plaintiff's claims. The Clerk is directed to enter judgment in favor of Defendant Sheppard.

**SO ORDERED**, this 24th day of October, 2014.

**/s/ W. Louis Sands**
**W. LOUIS SANDS, JUDGE**
**UNITED STATES DISTRICT COURT**